UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION

| | |
|---|---|
| GORMAN COMPANY, LLC, et al., | |
| Plaintiffs, | |
| V. | London Civil No. 6:10-228-GFVT |
| | Pikeville Civil No. 7:10-125-GFVT |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants, | |
| and | |
| KENTUCKY COAL ASSOCIATION, et al., | **MEMORANDUM OPINION & ORDER** |
| V. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

\*\*\* \*\*\* \*\*\* \*\*\*

These matters are before the Court on the Motion to Transfer [R. 5] filed by Defendants the United States Environmental Protection Agency ("EPA") and the United States Army Corps of Engineers ("Corps) (collectively, the "United States") in the *Gorman* action, and the Motion to Transfer or, in the Alternative, to Reassign [R. 15] filed by the Defendants in the *Kentucky Coal Association* ("KCA") action. In both, the movants seek transfer to the United States District Court for the District of Columbia so that the cases may be consolidated with a related case pending in that jurisdiction, *National Mining Ass'n v. Jackson*, Civ. No. 1:10-cv-01220-RBW (D. D.C.). In the *KCA* action, the Defendants alternatively seek consolidation with *Gorman* in the Eastern District of Kentucky.

The Court heard oral arguments on the motions to transfer during a joint telephonic conference held December 7, 2010. Thereafter, the Court entered Orders [10-228, R. 18; 10-125, R. 36] staying both cases pending the District of Columbia court's ruling on a motion to dismiss pending in the *National Mining Association* ("NMA") case. In staying *Gorman* and *Kentucky Coal Association*, this Court noted that the D.C. court could grant the motion to dismiss on grounds applicable to the NMA that would not apply to the Plaintiffs in the Kentucky cases. Therefore, it made sense to reserve fully considering and ruling on the motions to transfer until the motion to dismiss had been resolved.

On January 14, 2011, United States District Judge for the District of Columbia Reggie B. Walton issued his opinion denying the motion to dismiss filed by the Defendants in the NMA action. *See National Mining Ass'n v. Jackson*, 2011 WL 124194, at *16 (D. D.C. Jan. 14, 2011). In the same opinion, Judge Walton resolved the Plaintiff's motion for a preliminary injunction. *Id.* at 8-16. Although he found that the Plaintiff had demonstrated a likelihood of success on the merits, he ultimately denied the motion on the ground that the Plaintiff had not demonstrated irreparable harm. *See id.*

Following Judge Walton's decision, a motion was filed in the *Gorman* and *KCA* cases to advance the status conference previously scheduled for March 16, 2011; all parties consented to the motion. [10-228, R. 19; 10-125, R. 27.] Accordingly, the Court conducted a telephonic status conference on February 16, 2011. During the hearing, the government defendants renewed their motions to transfer. The Plaintiffs in both cases stated that they continue to oppose transfer. After hearing final arguments from both parties on the issue, the Court took the matter under advisement. For the reasons that follow, the Court grants the motions and transfers both *Gorman*

and *KCA* to the District of Columbia.

## I.

Plaintiffs Gorman Company, LLC, Kycoga Company, LLC, Black Gold Sales, Inc., Kentucky Union Company, and Hazard Coal Corporation filed suit seeking declaratory and injunctive relief on August 10, 2010. [10-228, R. 1.] According to the Plaintiffs, they own land containing significant coal reserves that they lease to mining operators, and they have incurred and stand to further incur significant and irreversible harm as a result of the EPA's June 11, 2009 issuance of Enhanced Coordination Process ("EC Process") memoranda and April 1, 2010 issuance of a memorandum entitled "Detailed Guidance: Improving EPA Review of Appalachian Surface Coal Mining Operations Under the Clean Water Act, National Environmental Policy Act, and the Environmental Justice Executive Order" ("Detailed Guidance"). [*Id.* at ¶¶ 1-2.] Specifically, the Plaintiffs challenge a series of EPA and Corps actions that they contend "have unlawfully obstructed Clean Water Act permitting processes for coal mining," namely the processes for obtaining Section 402 permits, which govern pollutants that are assimilated by receiving waters, and Section 404 permits, which authorize the discharge of material that fills or displaces receiving waters. [*Id.* at ¶¶ 2, 19.] The Plaintiffs allege that these actions "have imposed insurmountable technical and economic burdens on the coal mining industry, effectively shutting down surface coal mining (and possibly significant underground coal mining) throughout much of Central Appalachia, including the areas in which Plaintiffs own mineral interests." [*Id.* at ¶ 1.]

The Plaintiffs bring their claims pursuant to Section 702 of the Administrative Procedure Act ("APA"). [*Id.* at ¶ 1.] Their Complaint contains eleven counts. [*See id.* at ¶¶ 95-145.]

3

Among these counts are claims that the Detailed Guidance and the EC Process constitute legislative rules that were not properly promulgated under the APA [*id.* at ¶¶ 95-97, 101-103] and claims that the Detailed Guidance violates the Clean Water Act ("CWA"), the National Environmental Policy Act ("NEPA"), and the Surface Mining Control and Reclamation Act ("SMCRA") [*id.* at ¶¶ 113-122, 129-141]. The Plaintiffs seek relief, including an injunction restraining the Defendants from implementing, applying, or enforcing the EC Process and the Detailed Guidance. [*Id.* at 41-42.]

Before the *Gorman* case was filed, on July 20, 2010, the National Mining Association filed its lawsuit in the United States District Court for the District of Columbia. [10-228, R. 1, Attach. 2.] The NMA's complaint and the Complaint in the case at bar name the same defendants and challenge the same regulatory actions. [*See id.*, Attach. 2.] Indeed, the eleven counts contained in the NMA's complaint and the Complaint in the instant action are identical, and the same relief is sought. [Compare 10-228, R. 1 with R. 1, Attach. 2.]

On October 18, 2010, Plaintiff Kentucky Coal Association also filed suit seeking declaratory and injunctive relief.[1] [10-125, R. 1.] Like the Plaintiffs in *Gorman* and *National Mining Association*, the KCA challenges the EPA's use of the Detailed Guidance. [*Id.*] The KCA's Complaint, however, is much narrower. [*See id.*] It specifically challenges only the EPA's use of the Detailed Guidance in its oversight of the Commonwealth of Kentucky's issuance of National Pollutant Discharge Elimination System ("NPDES") permits under Section 402 of the Clean Water Act. [*Id.*] Further, the KCA's complaint contains only two counts. [*See*

---

[1]The Commonwealth of Kentucky and the City of Pikeville have intervened as Plaintiffs in the KCA suit.

*id.*] In its first count, the KCA claims in part that the Detailed Guidance amounts to a legislative rule that the EPA has adopted in violation of the Administrative Procedure Act, as the EPA failed to subject the Detailed Guidance to the procedural requirements of public notice and comment rulemaking. [*Id.* at ¶ 60.] In its second count, the KCA asks the Court to enjoin and restrain the EPA "from utilizing the Detailed Guidance in its oversight of Section 402 KPDES permit decisions, and from implementing the significant changes to the Section 402 KPDES program discussed in the Detailed Guidance unless and until it complies with federal law and/or public notice and comment rulemaking." [*Id.* at ¶ 64.] These claims, of course, are similar to claims raised by the Plaintiffs in *Gorman* and *National Mining Association*.

## II.

### A. The *Gorman* Case

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] In reviewing motions made pursuant to § 1404(a), courts consider a number of factors,

> including (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause.

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751,

---

[2]The Plaintiffs in *Gorman* and *Kentucky Coal Association* do not dispute that this lawsuit could have been brought in the District of Columbia.

755 (E.D. Ky. 2005) (citations and internal citations omitted). Thus, § 1404(a) "'place[s] discretion in the district court to adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness.'" *Id.* at 754 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Further, the burden of showing the desirability of transfer is generally placed on the moving party. *See Mead Data Central, Inc. v. West Publishing Company*, 679 F. Supp. 1455, 1457 (S.D. Ohio 1987); *Cowden v. Parker & Associates, Inc.*, 2010 WL 715850, at *2 (E.D. Ky. Feb. 22, 2010) (citation omitted).

The *Gorman* Plaintiffs emphasize the weight given to their choice of forum. [R. 9 at 5-7.³] They correctly note that "a plaintiff's choice of forum is ordinarily entitled to considerable weight." *Cowden*, 2010 WL 715850, at *2. And "[a]s a result, '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Id.* (quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). But the cases cited by the Plaintiffs that give controlling weight to the plaintiffs' choice of forum do not involve a duplicative or related case filed first in the proposed transferee jurisdiction; rather, transfer was sought on such grounds as *forum non conveniens*.⁴ *See Sun Oil Co. v. Lederle*, 199 F.2d 423 (6th Cir. 1952);

---

³Citations to the record in this section reference Civil Case No. 6:10-cv-228.

⁴In *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 885-86 (N.D. Ohio 1999), there were two ongoing lawsuits involving the same parties, but the court determined that those lawsuits were not duplicative before declining transfer. In the proposed transferee district, Cinemark filed suit against the Department of Justice (DOJ) and others, arguing that the DOJ's "promulation of a change in the law without prior notice, and its attempt to enforce its new rule retroactively, [were] violations of the APA, the ADA, and the Constitution." *Id.* at 885. In the case before the Northern District of Ohio, on the other hand, the United States filed suit against Cinemark, alleging that Cinemark had "violated the ADA by designing, constructing, and/or operating movie theaters in Ohio and throughout the United States that deny access to persons with disabilities who use wheelchairs." *Id.* at 886. Thus, there were no common issues of law and fact between the two cases. In contrast, here the *Gorman* and NMA suits raise the same

*Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951); *Int'l Union Elec. Radio & Mach. Workers, CIO v. Un. Elec. Radio & Mach. Workers of Am.*, 192 F.2d 847 (6th Cir. 1951); *Rutherford v. Goodyear Tire and Rubber Co.*, 943 F. Supp. 789 (W.D. Ky. 1996); *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996); *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213 (S.D. Ohio 1989); *Capital Consultants Corp. v. Charles Williams Real Estate Inv. Corp.*, 352 F. Supp. 101 (E.D. Tenn. 1972); *Crawford Transport Co. v. Chrysler Corp.*, 191 F. Supp. 223 (E.D. Ky. 1961).

Here, the Court is persuaded that the interests of justice require transfer. A lawsuit naming identical defendants and asserting identical claims was filed in the District of Columbia before the instant lawsuit commenced. In *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960), the Supreme Court stated that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." Further, according to the Sixth Circuit, "'[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.'" *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (6th Cir. 1997)). When presented with a duplicative suit, federal "courts often proceed . . . under the rule of thumb that the entire action should be decided by the court in which an action was first filed." *Id.* (citation omitted). This "first-to-file" rule "is a 'well-established doctrine that encourages comity among federal courts of equal rank.'" *Ables & Hall Builders v. U.S. Bank, N.A.*, 2008 WL 2168890, at *1 (W.D. Ky. May 23, 2008) (quoting *AmSouth Bank v.*

---

issues and make the same claims.

*Dale*, 386 F.3d 763, 791 n. 8 (6th Cir. 2004)).

The Plaintiffs contend that the first-to-file rule only applies when two or more suits contain *identical* parties. [R. 9 at 16.] Even the case cited by the Plaintiffs in support of this contention, however, states that the rule applies "when suits involving *substantially the same issues and parties* are filed in courts of concurrent jurisdiction . . . ." *Burrows v. Fed. Ins. Co.*, 2005 WL 1705751, at *2 (E.D Ky. July 21, 2005) (emphasis added). If both the instant lawsuit and the D.C. action are permitted to proceed in different courts, "[t]wo federal district courts would be considering identical issues, thus wasting the time of lawyers and judges [and] risking inconsistent results and confusing remedies . . . ." *Ables & Hall Builders*, 2008 WL 2168890, at *2. In general, the first-to-file rule appears to be a fair way to avoid these adverse consequences of duplicative litigation.

Citing *Mead Data Central, Inc. v. West Publishing Co.*, 679 F. Supp. 1455 (S.D. Ohio 1987), the Plaintiffs argue that "the mere specter of potentially inconsistent verdicts is of little-to-no consequence in deciding to disturb a plaintiff's forum selection by transferring the case to another forum." [R. 9 at 11.] *Mead Data Central* was an antitrust action filed against West Publishing Company ("West") in the Southern District of Ohio. 679 F. Supp. at 1456. West sought transfer of the action to the District of Minnesota, where two "arguably related actions" were pending. *Id.* In the first Minnesota action, West sought a declaratory judgment preventing Mead Data Central ("MDC") from infringing upon certain copyrights allegedly held by West. *Id.* The Ohio court, considering the motion to transfer, noted that "[i]t is true that MDC asks this Court to declare that West's copyright claims to judicial opinions are invalid and that West asks the Minnesota Court to declare that West's copyright claims to judicial opinions are valid." *Id.* at

8

1464. The court found, however, that because the parties in both cases were identical and thus collateral estoppel was available, conflicting results were "impossible as a legal matter." *Id.* The court therefore concluded that the possibility of conflicting results did not compel transfer. *Id.*

In the second Minnesota action, Bancroft-Whitney Company sought a declaration that West's copyrights in its annotated compilation of Texas statutes were invalid. *Id.* at 1456. The Ohio court found that because the Bancroft-Whitney action was "extremely narrow in its scope" raising questions of law, fact, and evidence dissimilar from the antitrust action before it, it could not "conclude that judicial economy and efficiency would best be served by requiring that the two cases be heard within the same court." *Id.* at 1464. Additionally, the Court noted that it could not "conclude that the specter of inconsistent results is dispositive with regard to the issue of transfer." *Id.*

Clearly, the transfer issue in the case at bar is very different from the transfer issue faced by the Southern District of Ohio in *Mead Data Central*. Because the Plaintiffs in the instant suit and the D.C. action are not the same, inconsistent results are not a legal impossibility. Further, the instant suit does not raise questions of law, fact, and evidence dissimilar from the D.C. action. Accordingly, the Court does not find any language in *Mead Data Central* about the mere "specter of inconsistent results" persuasive.

The Plaintiffs argue that the EPA regulations at issue in this case will have no effect on the citizens of the District of Columbia, but will have "dire consequences" for the people who live in this District and throughout the Commonwealth. [R. 9 at 9-10.] The Plaintiffs claim that numerous federal courts have either transferred venue or denied the transfer of venue based upon the public's interest in "having controversies that have local consequences decided in those local

communities." [*Id.* at 10.] In the cases cited by the Plaintiffs in support of their argument, however, the courts deciding the issue of transfer did not have to take into consideration a duplicative lawsuit pending in another jurisdiction. *See Cowden*, 2010 WL 715850; *Nat. Wildlife Federation v. Harvey*, 437 F. Supp. 2d 42 (D. D.C. 2006); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62 (D. D.C. 2003); *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5 (D. D.C. 2007). Additionally, in *Nat. Wildlife Federation*, the plaintiffs alleged that the Corps violated the Endangered Species Act through its water management schedule for Lake Okeechobee in southern Florida, 437 F. Supp. 2d at 44, and in *Flowers*, the Plaintiffs alleged that the Corps and the Fish and Wildlife Service violated "several federal environmental statutes by issuing mining permits for certain Everglades wetlands in southern Florida," 276 F. Supp. 2d at 63. Thus, in these cases, the impact of the suit was *purely* local. Here, on the other hand, the Plaintiffs state in their Complaint that the actions of the Defendants affect permits "associated with coal mining projects proposed within six states: Ohio, Pennsylvania, Tennessee, Virginia, Kentucky, and West Virginia." [R. 1 at ¶ 68.]

As for the factors such as the convenience of parties and witnesses, accessibility of sources of proof, and the costs of securing testimony from witnesses, the Court agrees with District Judge John T. Copenhaver, Jr., in the Southern District of West Virginia that these factors are "near neutral," as "the judicial inquiry in these cases" is likely to "be based exclusively on the administrative record."[5] *Huffman v. United States Environmental Protection Agency*, 2011 WL 322661, at *5 (S.D. W.Va. Jan. 31, 2011). Judge Copenhaver transferred a

---

[5]As for the relative congestion in the courts of the two forums, the Court finds that this factor is a nonissue. Matters that have arisen in *Gorman*, *KCA*, and *National Mining Association* have been resolved expeditiously by both this Court and the D.C. court.

case challenging the Detailed Guidance to the District of Columbia for its consolidation with the NMA case on January 31, 2011.[6] *See id.* at *1. Like the Court does here, Judge Copenhaver found that the defendants in his case met their burden of proving the desirability of transfer, as the significance of the plaintiffs' choice of forum was outweighed by the interests of justice. *Id.* at *7.

It is particularly worth noting Judge Copenhaver's comments regarding the different interests and different litigation strategies that may be pursued by the plaintiffs in the NMA case, the Plaintiffs in the *Gorman* and *Kentucky Coal Association* actions, and the plaintiffs in the case before him:

> Regarding the integrity of the judicial process, one would expect the defendants in the three different districts to pursue a unified approach. The same is not as easily said for their plaintiff counterparts. There is no overlap among the respected counsel on the plaintiffs' side, even in the *Gorman* and *KCA* actions in Kentucky. It seems certain then that all of these different lawyers may pursue differing litigation strategies, perhaps resulting in arguments and authorities being presented to one or some of the district judges but not their judicial counterpart(s). If those variances end up impacting the decisional law, both the judicial process and settled notions of fairness will suffer. That outcome . . . can easily be avoided by transfer.

*Id.* at *6. Here, during the February teleconference, the Plaintiffs explained that they oppose transfer in part because they have interests different from the NMA. Like Judge Copenhaver, however, this Court finds that the Plaintiffs' varying interests and litigation strategies are factors that weigh in favor of transfer, not against it.[7] If one court has the benefit of hearing all the

---

[6]At the telephonic status conference held on February 16, 2011, the Defendants made the Court aware that the D.C. court had granted their motion to have the *Huffman* case consolidated with the NMA action.

[7]While the Court generally agrees with Judge Copenhaver's analysis, it must respectfully disagree with the suggestion that the District of Columbia courts have a "peculiar expertise in

11

arguments, it will be better able to make a fully informed decision. Thus, the Court will transfer the *Gorman* action to the District of Columbia.

### B. The *KCA* Case

As noted previously, the *KCA* case is not identical to *Gorman*. Its focus is narrower, and the Commonwealth of Kentucky and the City of Pikeville have intervened as parties. Notably, the Commonwealth's Intervening Complaint alleges that the EPA's objection to Kentucky's NPDES permits on the basis of the Detailed Guidance violates the Tenth Amendment rights of the Commonwealth. [*See* 10-125, R. 10 at 28.] Ultimately, however, the Court finds that *KCA*'s differences do not change the analysis made above. In the end, like the *NMA* and *Gorman* actions, *KCA* targets the validity of the Detailed Guidance. Thus, "[i]rrespective of . . . the particular effects that defendants' policies have had in" the Commonwealth, if the Detailed Guidance is declared invalid, "be it in the D.C. District Court, this court, or some other," its effects on Kentucky's "water quality and surface mining policies are practically at an end absent a successful appeal." *See Huffman*, 2011 WL 322661, at *6.[8] Thus, in the interests of judicial integrity and avoiding inconsistent results, it makes sense for one court to resolve the issue.

Moreover, although a Kentucky federal court is more familiar and better able to handle issues of Kentucky law than is a District of Columbia federal court, *see West American Ins. Co. v. Miller*, 2010 WL 1369079, at *4 (E.D. Ky. Mar. 31, 2010), the Court finds that it is unlikely

---

administrative law" that may make them better suited to hear these cases. *Huffman*, 2011 WL 322661, at *7, n. 8.

[8]In *Huffman*, the Plaintiff is Randy C. Huffman, in his official capacity as Cabinet Secretary of the West Virginia Department of Environmental Protection, *acting on behalf of the State of West Virginia*. 2011 WL 322661.

that the D.C. court will need to decide issues of Kentucky law in the *KCA* case, and, if it does, any such issues would be minimal.

With the intervention of the Commonwealth and the City of Pikeville, the Plaintiffs in *KCA* perhaps have a stronger argument regarding the localized interest represented by the controversy. Again, however, the Court notes that the main case cited by the Plaintiffs in support of that argument, *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751 (E.D. Ky. 2005), involved a motion to transfer on the basis of a forum selection clause, not on the basis of a related case pending in the proposed transferee jurisdiction. Therefore, the Court will transfer the *KCA* case to the District of Columbia as well.

## III.

According, for the reasons stated above, it is hereby **ORDERED** as follows:

1. The Motion to Transfer [R. 5] filed in *Gorman Company, LLC, et al. v. United States Environmental Protection Agency, et al.*, Civil Case No. 6:10-228-GFVT, is **GRANTED**, and that action is transferred to the United States District Court for the District of Columbia for all further proceedings; and

2. The Motion to Transfer [R. 15] filed in *Kentucky Coal Association, et al. v. United States Environmental Protection Agency, et al.*, Civil Case No. 7:10-125-GFVT, is **GRANTED**, and that action is transferred to the United States District Court for the District of Columbia for all further proceedings.

This the 24th day of February, 2011.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge